Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8251 | **DATE** | 8/28/2002 |
| **CASE TITLE** | Conner v. Massanari | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion for Summary Judgment (#6-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the attached reasons, Plaintiff's Motion for Summary Judgment (#6-1) is GRANTED and this matter is REMANDED to provide Plaintiff with a full and fair hearing on her claim. All pending motions and dates are terminated as moot. Enter Memorandum Opinion and Order.

(11) ☐ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 29 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARLETHA CONNER )
    Plaintiff, )
 )
v. ) No. 01 C 8251
 )
LARRY G. MASSANARI, ) Judge William J. Hibbler
  Acting Commissioner of the Social )
  Security Administration )
    Defendant. )

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court for a review of the decision by the Commissioner of Social Security ("Defendant") to deny Arletha Conner ("Plaintiff") Social Security disability insurance benefits ("DIB") pursuant to the Social Security Act, 42 U.S.C. § 405(g). Plaintiff now moves for summary judgment or alternatively a remand for a new hearing. The issues have been fully briefed and thus are now ripe for ruling. For the following reasons, Plaintiff's Motion for Summary Judgment is GRANTED and this matter is REMANDED to provide Plaintiff with a full and fair hearing on her claim.

**BACKGROUND**

I. Procedural Background

Plaintiff applied for DIB on June 26, 1998 and alleged she had been unable to work since May 26, 1998. (Admin. R. 84-86, 99). The Commissioner of Social Security denied her application

1

initially and upon reconsideration. (Admin. R. 67-79). Administrative Law Judge ("ALJ") Michael McGuire conducted a hearing on August 10, 1999. (Admin. R. 36-66). Plaintiff was represented by counsel and Vocational Expert ("VE") Edward Pagella appeared and testified at the hearing. (Admin. R. 38-66). On October 27, 1999, ALJ McGuire issued a decision denying plaintiff's disability claim. (Admin. R. 13-24). Plaintiff sought review of ALJ McGuire's decision but review was denied by the Appeals Council on August 31, 2001 and Defendant adopted ALJ McGuire's decision as his final decision on Plaintiff's claim. (Admin. R. 6-8). On October 26, 2001, Plaintiff filed this case seeking judicial review of Defendant's denial of her claim for disability insurance benefits.

## II. Facts

Plaintiff was born on December 13, 1952, and was 46 years old when the ALJ issued his decision. (Admin. R. 40). She has four children. (Admin. R. 40). Plaintiff has suffered from depression since her teenage years. (Admin. R. 61, 159, 222). Plaintiff attended one year of college and worked approximately ten years performing data entry work in the credit department of Carson, Pirie & Scott. (Admin. R. 41, 103, 157). Plaintiff has had steady earnings from 1969 to 1979 and from 1986 to 1997. (Admin. R. 89). She left her job at Carson, Pirie & Scott in 1998 because of pain and swelling in her hands and shoulder

(Admin. R. 43, 157). Plaintiff reported the pain and swelling in her right arm began in December 1997. (Admin. R. 140). The pain started in her neck, but subsequently was described as shooting from the elbow and out the third finger on her right hand. *Id.*

In June 1998, Dr. Juliana Eschbach reported she had been seeing Plaintiff since October 1997. (Admin. R. 132). Plaintiff reported pain and swelling in her right upper extremity, but Dr. Eschbach observed no swelling and found no reduction in range of motion, no sensory changes, no reflex abnormalities, no motor weakness, no muscles spasm, and no atrophy. *Id.* Dr. Eschbach noted Plaintiff's subjective complaints of pain were greater than would be expected for the recognized level of pathology and her ability to engage in physical activity was "self limited to secondary pain." (Admin. R. 133). Dr. Eschbach noted Plaintiff had no other mental or physical conditions that would significantly affect her ability to work. (Admin. R. 134). Dr. Eschbach referred Plaintiff to a neurologist. (Admin. R. 133).

The neurologist, Dr. Vincent, evaluated plaintiff in July, 1998 and diagnosed tenosynovitis[1] of the right hand and fingers. (Admin. R. 136-40). Her diagnosis was later characterized as "de Quervain's tenosynovitis (bilateral)." (Admin. R. 213)

---

[1] Tenosynovitis is inflammation of the membrane surrounding a tendon. Larson, David E., M.D., *Mayo Clinic Family Health Book*, at p.881 (2nd ed., 1996)("*Mayo Clinic*").

3

Later, the Cook County Hospital Arthritis Clinic evaluated Plaintiff in May 1999. Plaintiff reported tenderness in her upper extremities and neck and her pain and symptoms were thought to be uncharacteristic of carpal tunnel syndrome. (Admin. R. 241-42). The examiner questioned whether there was a "component of fibromyalgia[2] given multiple tender points." *Id.*

The Cook County Hospital Pain Clinic examined Plaintiff in July 1999. She reported tenderness in her neck, trapezium muscle, and shoulders, but all objective findings were unremarkable. (Admin. R. 239). Plaintiff was diagnosed with fibromyalgia, depression, and tenosynovitis. (Admin. R. 240).

During this time, Plaintiff also was seen in a variety of other clinics at Cook County Hospital: Occupational Medicine (Admin. R. 171-74); Hand Surgery (Admin. R. 175); and Psychiatry (Admin. R.222-25).

Dr. Martin Fields conducted a consultative psychiatric evaluation of Plaintiff in September 1998. Upon mental status examination, Plaintiff was cooperative and behaved normally, although "she presented with a depressed affect." (Admin. R. 158). She displayed "no problems with emotional reaction at the moment" but reported she was minimally "fearful of the environment around her." *Id.* Dr. Fields did not find problems

---

[2] Fibromyalgia is diffuse pain, stiffness and tenderness in joints and muscles. *Mayo Clinic* at 883.

with Plaintiff's abstract thinking, judgment or insight. *Id.* Plaintiff stated she had been prescribed Depakote, Doxepin, and Zoloft, among other medications, for her depression and mood instability, but she had not taken the medications for a month because she could not afford them. (Admin. R. 159). Plaintiff was able to concentrate well enough to watch an entire movie, make a grocery list and then shop for groceries, and plan her day. *Id.* Dr. Fields offered a diagnosis of bi-polar disorder and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 40 to 50.[3] (Admin. R. 160).

Psychiatrist David Gilliand reviewed the record after Dr. Fields' evaluation and concluded Plaintiff had no significant limitation in all areas of work-related mental activity, except she was moderately limited in her ability to carry out detailed instructions. (Admin. R. 161-63).

At Plaintiff's administrative hearing, the ALJ posed a hypothetical question to the VE, directing him to assume an individual with Plaintiff's vocational characteristics who could lift and carry ten pounds on occasion, stand or walk for two

---

[3] A GAF score of 31-40 is intended to identify an individual with "[s]ome impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas... ." A GAF score of 41-50 is intended to identify an individual with "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." Amer. Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV*, at p.34 (4th ed. text revision, 2000).

5

hours sit for six hours, and push or pull ten pounds, but would need to avoid repetitive fine motor activity and unnecessary contact with the public coworkers. (Admin. R. 62). The VE testified the hypothetical individual could not perform Plaintiff's past relevant work as a data entry clerk, but could perform thousands of other jobs in the Chicago metropolitan area. (Admin. R. 62-65).

**STANDARD OF REVIEW**

Judicial review of the ALJ's decision is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence in the record to support the findings. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000)(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing the record that was before the ALJ, the Court may not substitute its own judgment for that of the Commissioner, reweigh the facts, resolve conflicts, or decide credibility questions. *Godbey v. Apfel*, 238 F.3d 803, 807 (7th Cir. 2000) (citation omitted). "However, this does not mean that [the Court] will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford*, 227 F.3d at 869. The Court may reverse the Commissioner's decision only

if the evidence supports a contrary decision. *INS v. Elias-Zacarias*, 502 U.S. 478, 581 n.1 (1992). In order to uphold the decision of the Commissioner, the ALJ need not comment on every piece of evidence presented, but the ALJ's decision must be based on consideration of all the relevant evidence. *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988). The Court must determine not only there was "enough evidence in the record to support the decision, [but] the reasons given by the trier of fact [must] build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

**ANALYSIS**

On appeal, Plaintiff argues the ALJ's finding that Plaintiff can perform work in the national economy is based on errors of law and is not supported by substantial evidence. To establish disability under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). When evaluating disability claims, the ALJ uses a five-step sequential analysis: (1) if the claimant is presently employed, then she is not disabled; (2) if the claimant's impairment is not "severe," then she is not disabled; (3) if the impairment meets or

7

medically equals a listed impairment, then she is disabled; (4) if the claimant has the residual functional capacity to perform her past relevant work, then she is not disabled; and (5) if the claimant has the residual functional capacity to perform any other work, then she is not disabled. 20 C.F.R. § 404.1520; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

At step five of the disability evaluation process, Defendant must determine a claimant's residual functional capacity. 20 C.F.R. § 404.1520(f). Residual functional capacity is what a claimant can do despite the limitations caused by her impairments. 20 C.F.R. § 404.1545(a). Residual functional capacity considers limitations to claimant's mental and physical abilities. 20 C.F.R. § 404.1545(b) and (c).

In determining a claimant's residual functional capacity, Defendant must consider the limitations caused by all of Plaintiff's impairments. 20 C.F.R. § 404.1545(a). In this case, Defendant failed to consider the limitations imposed upon Plaintiff's physical capacity by her fibromyalgia. Rather, Defendant rejected the opinions of Plaintiff's treating physicians that Plaintiff suffers from fibromyalgia. (Admin. R. 18). The ALJ dismissed Plaintiff's physician's diagnosis of fibromyalgia and substituted his own, "better supported" diagnosis of de Quevain tenosynovitis. *Id*. Defendant committed plain error when the ALJ rejected a confirmed diagnosis and

8

excluded fibromyaglia in his findings concerning Plaintiff's impairments.

The Seventh Circuit has recognized fibromyalgia is an impairment that can be so severe as to preclude work. *See Sarchet*, 78 F.3d at 307. Here, Defendant simply rejected Plaintiff's diagnosis of fibromyalgia (Admin. R. 18), even though the medical records established the diagnosis. (Admin. R. 237-42). In explaining the rejection, Defendant stated, "[h]ere, all there is are complaints of tender points and some tender points found on examination." (Admin. R. 18). The presence of tender points, however, is the principal objective symptom of fibromyalgia. *Sarchet*, 78 F.3d at 306. The physicians whose examinations of Plaintiff led to the fibromyalgia diagnosis both noted finding multiple tender points. (Admin. R. 240, 242).

More critical than Defendant's basic misunderstanding of this disease is the reflection of a very disturbing trend in Defendant's disability decisions in this Circuit: the tendency of the ALJ to "play doctor" and substitute their unsupported judgment for the medical judgment of physicians. *See Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992); *Schmidt v. Sullivan*, 914 F.2d 117, 118-19 (7th Cir. 1990). Defendant's conclusion that Plaintiff does not suffer from fibromyalgia is contradicted by the medical

9

opinions of two physicians who examined Plaintiff. First, she was seen in the Cook County Hospital's Arthritis Clinic in May, 1999 and fibromyalgia was tentatively diagnosed. (Admin. R. 241-42). Then, she underwent a comprehensive evaluation at the Cook County Hospital's Pain Clinic in July, 1999 and her fibromyalgia was confirmed. (Admin. R. 237-40). The ALJ did not consider fibromyalgia with impairments when the ALJ decided her disability claim. (Admin. R. 20-21).

In its response, Defendant attempts for the first time to offer an explanation for these deficiencies. However, the Court's role is not to provide a rationale for the ALJ's findings, but rather to determine if the rationale for the findings provided in the ALJ's written decision builds an accurate and logical bridge between the evidence and the findings. *Sarchet*, 78 F.3d at 307. Otherwise, the Court would be acting as a fact-finder, rather than a court of review. *Eads v. Secretary of DHHS*, 983 F.2d 815, 817-18 (7th Cir. 1993).

The ALJ's only stated rationale for rejecting the fibromyalgia diagnosis is "[h]ere, all there is are complaints of tender points and some tender points found on examination." (Admin. R. 18). The Court does not see "an accurate and logical bridge between" the medical records indicating a diagnosis of fibromyalgia and "the findings" that do not include fibromyalgia in its analysis. *Sarchet*, 78 F. 3d at 307.

10

Moreover, the record lacks any contrary medical evidence to support the ALJ's rejection of the diagnosis of fibromyalgia. The credible opinions of treating physicians are to be given substantial weight in the disability evaluation process. 20 C.F.R. § 404.1527(d)(2). An ALJ may not reject a diagnosis or opinion of a treating physician unless there is contrary medical evidence in the record. *Clifford*, 227 F.3d at 870. In this case, there is no medical evidence in the record that contradicts the fibromyalgia diagnosis. Absent such medical evidence, the ALJ's rejection of the fibromyalgia diagnosis was not proper because he substituted his judgment for the judgment of a physician. *Id.*

Additionally, the ALJ did not consider the limitations caused by Plaintiff's symptoms. The limitations caused by a disability claimant's symptoms, such as pain, must be considered in determining her residual functional capacity. 20 C.F.R. § 404.1534(a). Plaintiff's medical records document the physical symptoms of fatigue, pain, swelling and weakness stemming from her impairments. (Admin. R. 132-33, 136-40, 167-72, 209, 212-14, 217, 227-29, 237-42). Additionally, Plaintiff's hearing testimony focused on her symptoms of fatigue, irascibility, pain and loss of interest in physical function. (Admin. R. 43-61).

The ALJ violated the extensive procedures established by Defendant for assessing disability claims. *See* 20 C.F.R. §

404.1529; Social Security Ruling ("SSR") 96-7p, *Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.[4] In assessing the impact of a claimant's symptoms on residual functional capacity, the ALJ is required to consider, *inter alia*: daily activates; the location, duration, frequency and intensity of symptoms; precipitating and aggravating factors; type, dosage, effectiveness and side effects of medications that are taken to relieve symptoms; and other non-medical treatment of symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p. The ALJ's decision must contain a specific rationale, supported by evidence in the record, of the weight accorded to a claimant's description of her symptoms and limitations. SSR 96-7p, #5. Here, the ALJ's decision shows a majority of the SSR factors were not considered in rendering his decision; further, the ALJ's decision dealt with Plaintiff's evidence concerning her symptoms and limitations in a conclusory manner. (Admin. R. 16-21). The ALJ's denial of Plaintiff's claim contains no "specific rationale." The ALJ's conclusion that Plaintiff's allegations of disabling symptoms and limitations cannot be accepted and fails the basic principle of disability evaluation that Defendant must "build a bridge" from the evidence to conclusion. *Green*, 204 F.3d at 781-82.

---

[4] Social Security Rulings are binding on ALJs in rendering decisions on disability claims. *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991).

The ALJ improperly dismissed Plaintiff's testimony. If an ALJ finds a disability claimant's testimony is not credible because the testimony is inconsistent with the medical evidence, then the ALJ must explain this inconsistency in her decision. *Zurawski v. Halter*, 245 F. 3d 881, 887-888 (7th Cir. 2001). In this case, the ALJ found "[t]he claimant's testimony is not credible in that her symptoms far exceeds [sic] her medical problems." (Admin. R. 19). The ALJ's decision fails to explain how Plaintiff's testimony was inconsistent with the medical evidence of record. *Id.* Absent a proper finding that Plaintiff's testimony lacked credibility, her testimony is entitled to be carefully considered in the assessment of her residual functional capacity.

The ALJ also failed to properly consider Plaintiff's mental impairments. A disability claimant's residual functional capacity includes her mental ability to understand, remember and carry out instructions and to respond appropriately to supervision, co-workers and work pressures in a work setting. 20 C.F.R. § 404.1545(c). The ALJ found Plaintiff's only mental impairment was her need to avoid unnecessary contact with the public and co-workers. (Admin. R. 19). However, the ALJ did not explain his rationale for this finding and did not cite to any evidence to support it.

The ALJ also gave little weight to Dr. Fields' evaluation of Plaintiff. Dr. Fields diagnosed Plaintiff with bipolar disorder and determined Plaintiff was unable to work. (Admin. R. 157-60). Dr. Fields also rated Plaintiff's GAF as 40-50 (Admin. R. 160), i.e. she has symptoms that seriously impair her ability to function occupationally or socially. *Diagnostic and Statistical Manual of Mental Disorders*, American Psychiatric Association (4th ed. 1994), at 32. The ALJ gave little weight to Dr. Fields' evaluation because, "it is contradicted by Dr. Fields's [sic] own examination and the record as a whole." (Admin. R. 18). However, the ALJ does not explain any internal inconsistencies in Dr. Fields' report and does not identify any other evidence in the record that contradicts Dr. Fields' opinions. In fact, the other evidence in the record concerning Plaintiff's mental impairments are consistent with Dr. Fields' opinions. A psychiatric evaluation of Plaintiff at Cook County Hospital also diagnosed bipolar disorder and rated her GAF as 50. (Admin. R. 223). The ALJ may have appropriately discounted Dr. Fields' opinions and the Cook County Hospital report if they were contradicted by other medical evidence in the record. *See Clifford*, 227 F.3d at 870. They clearly were not.

As expressed throughout this opinion, the Court is concerned and cautious when ALJs substitute their personal judgment for the medical judgment of physicians. Clearly, the Seventh Circuit has

14

a similar concern. *See Green*, 204 F.3d at 781; *Rohan*, 98 F.3d at 970; *Scivally*, 966 F.2d at 1077; *Schmidt*, 914 F.2d at 118-19. In doing so here, Defendant has failed to build an accurate and logical bridge between the evidence and the findings. *Sarchet*, 78 F.3d at 307.

## CONCLUSION

For the above reasons, Plaintiff's motion for summary judgment is GRANTED and this matter is REMANDED to provide Plaintiff with a full and fair hearing on her claim.

**IT IS SO ORDERED.**

**Dated:** August 28, 2002

*Wm. J. Hibbler*

**WILLIAM J. HIBBLER, DISTRICT JUDGE**